# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## ROBINSON V. CITY OF NORFOLK.

### March 12, 1908.

1. LICENSE—*Revenue Purposes—Police Regulation.*—If a tax is laid upon persons or property under a general taxing ordinance the necessary conclusion is that it is laid for revenue purposes alone, unless the contrary is made clearly to appear. To construe a general taxing ordinance as a police regulation, it must be shown that the tax collected thereunder is devoted to the expense incident to carrying out its provisions.

2. CONSTITUTIONAL LAW — *Licenses — Revenue Purposes — Territorial Limits—Circus Outside of City—Code (1904) Sec. 1032.*—The legislature cannot authorize a city to levy a license tax upon a circus exhibition beyond its territorial limits, for the sole purpose of raising revenue to defray the general expenses of such city, and in so far as section 1032 of the Code (1904) authorizes such a tax it is invalid. Taxes for revenue cannot be imposed upon property or subjects outside the territorial limits of the taxing power, as this would be, in effect, taking the property of a citizen for a private use.

Error to a judgment of the Law and Chancery Court of the city of Norfolk in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Loyall & Taylor,* for the plaintiff in error.

*James F. Duncan,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action of trespass on the case in assumpsit involves the right of the city of Norfolk to assess a circus with a license tax that is exhibiting beyond the territorial limits of the city, but within one mile of such limits.

The facts agreed of record are as follows: "That John F. Robinson gave a circus performance on September 16, 1906, wholly within the county of Norfolk, within one mile of the corporate limits of the city of Norfolk, but the territorial limits of the city of Norfolk do not extend to the locality where said performance was given. That no parade in said city was given. That this suit is brought to collect a license tax imposed by the city of Norfolk under section 55 of an ordinance of the city of Norfolk, adopted by the select and common councils of said city on the 10th and 14th of April, 1906, and approved by the mayor, April 21, 1906. That such parts of the charter and ordinances of the city of Norfolk as are pertinent to the subject matter hereof shall be admissible. That the license tax authorized and collected by section 55 above is not applied to the special object of defraying the expenses incident to the police or other protection furnished circus performances, but to the general expenses of the city.

"That the said John F. Robinson paid the license tax in the county of Norfolk imposed by the State of Virginia.

"That the decision in this suit shall determine the issue in the suit of the *City of Norfolk* v. *Barnum & Bailey, Limited,* pending in this court."

The whole matter of law and fact was heard and determined by the court, and judgment rendered in favor of the city for the tax assessed, with interest and costs.

This demand of the city is in pursuance of section 55 of its general tax ordinance, imposing taxes upon property, persons and licenses for all city purposes, and is as follows:

"55. Circuses or menageries, within the city or within one mile of the boundary thereof, for every twenty-four hours or part thereof, including one parade, $350 each, and for each parade of a circus or menagerie, not included in the above, $350. Sideshows, for each tent, within the city, or within one mile of the boundary thereof, $25 for every twenty-four hours or part thereof."

The city of Norfolk relies upon section 1032 of the Code as its authority for this ordinance and the assessment of the license tax therein provided for.   That section is as follows:

"The jurisdiction of the corporate authorities of each town or city, in criminal matters and for imposing and collecting a license tax on all shows, performances, and exhibitions, shall extend one mile beyond the corporate limits of such town or city."

The payment of this tax is resisted by the defendant as an unwarranted and invalid exercise of the taxing power by the city of Norfolk.

For the purposes of taxation, the Constitution has divided the State into counties and magisterial districts, cities and towns.   Each of these sub-divisions has its territorial limits fixed, each being distinct and separate from the other.   What is meant by the words "territorial limits," in section 168 of the Constitution, is the actual boundaries of each of such sub-divisions, as the same are fixed by law.   It would seem to be fundamental that one of these communities cannot, for its own benefit, tax one of the others which has no share in the benefit to be derived from such taxation.

The circus in question was being exhibited in Norfolk county.   The territorial limits of that county embraced the whole county, and it cannot be seriously contended that the legislature can create a taxing district in a county from which a city shall raise revenue for the exclusive benefit of such city.

The principle that one territory cannot be taxed for the benefit of another is fundamental, and well recognized by the authorities on the subject.   It does not rest alone upon the theory of taxation without representation, but upon the principle that private property cannot be taken for anything but a public use.   Cooley on Taxation (2nd ed.), ch. 5, p. 140, *et seq.,* and cases cited.

At pp. 141-2, this learned author says: "It can therefore be stated with emphasis, that the burden of a tax must be made to rest upon the State at large, or upon any particular district

of the State, according as the purpose for which it is levied is of general concern to the whole State, or, on the other hand, pertains only to the particular district. A State purpose must be accomplished by State taxation; a county purpose by county taxation; or a public purpose for any inferior district by taxation of such district. This is not only just but it is essential. To any extent that one man is compelled to pay in order to relieve others of a public burden properly resting upon them, his property is taken for private purposes, as plainly and palpably as it would be if appropriated to the payment of the debts or the discharge of obligations which the person thus relieved by his payments might owe to private parties." And again at p. 161 it is said: "It is certainly difficult to understand how the taxation of a district can be defended where people have no voice in voting it, in selecting the purposes, or in expending it."

The only case in Virginia on the subject of extra-territorial taxation is *Langhorne &c. v. Robinson*, 20 Gratt. 661. In this case an act which authorized the city of Lynchburg to tax property within its corporate limits and for one-half a mile beyond its boundaries, for the purpose of paying interest on bonds of the Va. & Tenn. R. Co. was held by a divided court to be constitutional. This has been termed by Judge Cooley a doubtful case. (Cooley on Taxation, 160.) That case arose under the Constitution of 1830, which imposed no restriction upon the legislature with respect to its power of taxation; whereas, the existing Constitution provides that, "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." It was not until the adoption of the Constitution of 1851 that it was required that taxation should be equal and uniform.

The case of *Langhorne &c. v. Robinson*, was criticised in *St. Charles v. Nolle*, 51 Mo. 124, 11 Am. Rep. 440 which follows the case of *Weston v. Wells*, 22 Mo. 384, 66 Am. Dec. 627. In the latter case the legislature had undertaken to empower the city to tax lands adjoining the city to the extent of half a

mile for local purposes, and the city, under this authority, had imposed taxes which the plaintiff resisted. The court pronounced the law unconstitutional, giving as a reason that the proper construction of the Constitution in regard to taking private property for public use, is that it can be taken only for public use, and not for private use at all, and when taken for public use there must be a just compensation allowed and paid. To tax occupations outside of a city for the benefit of those living in a city is, in effect, taking the property of a citizen for private use; that is, for the use of a particular community, of which the outside citizen forms no part. Whether it be called a tax or the appropriation of property, the result is precisely the same. Power to violate those rights would seem to be quite beyond the lawful authority of any government, and certainly the legislative department of the government can not arbitrarily take the property of one citizen to give it to another, and, of course, can not authorize others to do so.

If it were permissible for a city to raise revenue from circuses outside of its territorial limits, it would be equally permissible for the legislature to authorize that city to levy a tax upon any class of property in a county contiguous thereto for the exclusive benefit of such city.

It is not necessary in this case to decide whether or not the city of Norfolk can assess a license tax against circuses either within or without its territorial limits, under its police power, for the purpose of police regulation; because, it clearly appears from the record that the circus tax in question was levied for the purpose of raising revenue to defray the general expenses of the city government and not for the special purpose of meeting the expense incident to such police protection as might be afforded the circus. The agreed statement of facts shows: "That the license tax authorized and collected under section 55 of the ordinance is not applied to the special object of defraying the expenses incident to the police or other protection furnished circus performances, but to the general expenses of the city."

That the tax in question was intended for general revenue purposes and not specially for police regulation, is shown by the ordinance itself, the preamble to which is as follows:

1. Be it ordained by the common and select councils of the city of Norfolk, that no person shall engage in any business in the said city of Norfolk, for which a license is required by the laws of the Commonwealth, or the ordinances of said city, without first having applied for and obtained such license, under the penalty or penalties hereinafter provided, as a part of this ordinance; and that for the year beginning on the 1st day of February, 1906, and for each year thereafter, while this ordinance is in force the taxes on lands and lots, persons, incomes and other property for the support of the city government, the payment of interest on the city debt, and for other municipal expenses, shall be as follows:"

Then follows the general levy upon all subjects of taxation, including licenses. As to the latter, it is ordained as follows:

"14. Be it further ordained, that for the year beginning the first day of May, 1906, and for each year thereafter until further provision is made, the license taxes on persons, firms, companies, associations and corporations conducting business or engaged in professional employment, or doing anything for which a license is required in the city of Norfolk, shall be as follows:" Here follows a long list of callings upon which a license tax is imposed, section 55 being the imposition of the tax upon circuses sought to be enforced in this case. It is given a place along with the numerous sections imposing license taxes on every trade, calling and occupation which the councils could reach, and no reason is perceived why the city intended section 55 to be construed as a police measure any more than it intended the sections imposing a license tax on the numerous other callings named to be construed as police measures. It is true that the expense of the police department is paid from the general revenues of the city, but this expense is merely a part of the whole general expense and does not come from any special

source. This ordinance, in which section 55 is found, constitutes the regular annual revenue bill enacted by the councils of the city of Norfolk, and it cannot be successfully controverted that every subject embraced therein is taxed for raising revenue and for no other purpose.

The distinction between the police power and the taxing power is clearly drawn by the authorities.

In 22 Am. & Eng. Enc. L., 917, the difference is thus defined: "The police power must also be distinguished from the taxing power, and the distinction is this: That the taxing power is exercised for the raising of revenue and is subject to certain limitations, while the police power is exercised only for the purpose of promoting the public welfare, and though this end may be attained by taxing or licensing occupations, yet the object must always be regulation and not the raising of revenue, and hence the restrictions upon the taxing power do not apply."

In the case of *Hudson Ry. Co.* v. *Hoboken,* 41 N. J. L. 71, the court says: "The exaction of license fees for revenue purposes is the exercise of the power of taxation. The distinction between the power to license as a police regulation and the same power as a revenue measure, is of the utmost importance. If granted with a view to revenue, the amount of the tax, if not limited by the charter, is in the discretion of the authorities; if given as a police power it must be exercised as a means of regulation only, and cannot be used as a source of revenue."

"Only those cases where regulation is the primary purpose can be specially referred to the police power." Cooley on Taxation, 587.

Where any imposition is laid upon persons or property under a general taxing ordinance, the only conclusion that can be drawn is that such tax is laid for revenue purposes alone, unless the contrary is made clearly to appear. To construe a general taxing ordinance as a police ordinance, it must be shown that the tax collected thereunder is devoted to the expense incident to carrying out its provisions. Otherwise, there would be nothing to distinguish a revenue ordinance from a police ordinance.

The ordinance in question being, as shown, for the purpose of raising revenue to defray the general expenses of the city government, we are of opinion that section 55 thereof, imposing a license tax on circuses outside of the territorial limits of the city of Norfolk is unwarranted. And we are further of opinion that the legislature cannot authorize a city to levy a license tax upon a circus, exhibiting beyond its territorial limits, for the sole purpose of raising revenue to defray the general expenses of such city; and that, in so far as section 1032 of the Code authorizes such a tax, it is invalid.

. For these reasons, the judgment complained of must be reversed, and this court proceeding to enter such judgment as the lower court ought to have entered, it is ordered that this suit be dismissed.

*Reversed.*